891 F.2d 293
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwayne Orlander HILL, Robert DeBarge, Mark Douglas, and
Jonathan Arthur DeBarge, Defendants-Appellants.
 Nos. 89-1145, 89-1409, 89-1215 and 89-1352.
 United States Court of Appeals, Sixth Circuit.
 Dec. 5, 1989.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendants-appellants Dwayne Orlander Hill (Hill), Robert DeBarge, Mark Douglas (Douglas), and Jonathan Arthur DeBarge (Jonathan DeBarge) appeal their conviction on, inter alia, several conspiracy and substantive counts of possession with an intent to distribute cocaine.
 
 
 2
 Appellants were convicted after a jury trial in which the principal witness testifying against them was one Kim DaVillier (DaVillier), an indicted member of the conspiracy who had pled guilty to the various counts contained in the indictment and who had agreed to cooperate with the Government in prosecuting the case against appellants. Appellants make various assignments of error on appeal, the first of which relates to the Government's subpeonaing DaVillier to testify before the grand jury in September, 1988, two months after the indictment had been returned. Specifically, appellants contend that the Government impermissibly used DaVillier's grand jury testimony for the purpose of "preparing" its case for trial. Without considering if Government in fact "abused" the grand jury process in this fashion, it is apparent from the record of the trial that DaVillier's grand jury testimony was not introduced or used during the trial of this cause and that her appearance before the grand jury prejudiced appellants in no manner. Therefore, this argument is without merit.
 
 
 3
 Appellants Hill and Jonathan DeBarge contend on appeal that the district court erred in overruling their motion to suppress evidence obtained during a search of their luggage at the Detroit Metropolitan Airport on June 28, 1988. Specifically, appellants Hill and Jonathan DeBarge argue that their encounter at the airport with agents of the Drug Enforcement Administration infringed their fourth amendment rights in that the DEA agents could not constitutionally interrogate appellants solely upon the observation that appellants' behavior and appearance conformed with a "drug courier profile." It is well-established that the use of a drug courier profile as a foundation for reaching the objective conclusion that an individual may be engaged in unlawful conduct, in conjunction with the particularized suspicion that may result during the course of a consensual police-civilian encounter of the type that occurred in the first instance in this case, provides the "reasonable and articulable suspicion" necessary to conduct an investigatory detention. See United States v. Sokolow, 109 S.Ct. 1581 (1989); United States v. Clardy, 819 F.2d 670 (6th Cir.1987); United States v. Tolbert, 692 F.2d 1041 (6th Cir.1982). In the instant case, the facts as developed at the hearing on the motion to suppress clearly demonstrate that the initial encounter between appellants Hill and Jonathan DeBarge and the DEA agents was no more than a consensual interrogation. Information adduced during this initial stage, coupled with the objective determination that appellants were acting in conformity with various elements of a standard drug courier profile, led to the formation of the reasonable and articulable suspicion necessary to conduct an investigatory detention and search. During the investigatory detention, the contraband was discovered, and the probable cause constitutionally required to effectuate appellants' arrest was thus established. At no step in this process, albeit a rapidly developing scenario in which each successive stage and each accompanying level of constitutional protection tend to form a nearly seamless continuum, did the DEA agents violate appellants' fourth amendment right to be free from unreasonable searches and seizures.
 
 
 4
 Appellant Douglas also asserts that the district court erred instructing the jury that it could consider statements made by appellant Hill during several telephone conversations initiated by Hill at the direction of DEA agents during which Douglas made self-incriminating statements with respect to his professed ability to supply the conspiracy with at least four additional kilograms of cocaine. Douglas urges that his statements to Hill during these conversations were inadmissible to prove his participation in the conspiracy because, at the time the calls were placed, Hill was acting under the direction of DEA agents and was no longer a member of the conspiracy. This court concludes, however, that statements made by Douglas during these recorded conversations were sufficient--standing alone--to support Douglas's conviction. See United States v. Hamilton, 689 F.2d 1262, 1269 (6th Cir.1982) (statements of unarrested conspirator made to an arrested co-conspirator are admissible under F.R.E. 801(d)(2)(E) even though the arrested co-conspirator is acting under government surveillance). For that reason, even if the court were to find error in the district court's jury instruction, the error would be harmless and this argument is, therefore, without merit.
 
 
 5
 Appellant Douglas further objects to the district court's finding, predicated solely upon the aforementioned recorded self-incriminating statements, that he was capable of providing his co-conspirators with an additional four kilograms of cocaine. For purposes of sentencing Douglas under the sentencing guidelines, the district court was authorized to take into consideration the amount of cocaine that Douglas stated he was prepared to provide his co-conspirators. See United States Sentencing Commission, Guidelines Manual, § 2D1.4 (weight of narcotics negotiated in an uncompleted distribution must be used for purposes of calculating the applicable sentence range). This assignment of error is without merit because the record clearly supports the district court's findings in this regard, and is not a valid attack on Douglas's sentence.
 
 
 6
 Appellants also assign error to the district court for quashing a subpeona that had been issued to procure the additional live testimony of Agent Stephen Georges, an agent with the Los Angeles office of the DEA. Agent Georges, after he had arrested conspirator DaVallier in Los Angeles, interviewed DaVallier and recorded the substance of her responses on DEA forms. Appellants desired to recall Agent Georges as sponsor of the DEA forms and their contents in order to demonstrate alleged inconsistencies between DaVillier's trial testimony and the information she provided Agent Georges as reflected in the forms. When the subpeona was requested pursuant to Fed.R.Crim.P. 17(b), both Agent Georges and DaVillier had already testified at appellants' trial and had, therefore, been available to provide testimony relevant to the controversial contents of the DEA forms. No attempt was made at that time to establish that DaVillier adopted the contents of the DEA forms as her own. The district court was correct in concluding that appellants' objective in subpeonaing Georges, which was to impeach DaVallier's testimony through the contents of the forms, was impermissible because DaVillier could not be impeached through the introduction of statements that she had not adopted as her own. The contents of the DEA forms may have been "prior," and may also have been "inconsistent," but they simply were not "statements" in the relevant sense. See Goldberg v. United States, 425 U.S. 94, 106-09, 96 S.Ct. 1338, 1346-48 (1976) (contents of government-prepared documents are not "statements" of a witness unless adopted as such). Therefore, the district court did not err in quashing the subpeona, as Agent George's return to the witness stand would not have served any purpose beneficial to appellants' defense. See Fed.R.Crim.P. 17(b) (subpeona will be issued at request of indigent defendant if court deems resulting testimony to be "necessary to an adequate defense").
 
 
 7
 Appellants Hill and Jonathan DeBarge, both of whom were arrested at the Detroit Airport and who cooperated thereafter with the DEA in making a sham delivery of cocaine to other members of the conspiracy in Grand Rapids, Michigan (which is located in the Western District of Michigan), allege that venue in the Western District was improper with respect to the count in the indictment charging them with the substantive offense of transporting narcotics in interstate commerce from California to the Western District. In sum, appellants Hill and Jonathan DeBarge argue that, because they were arrested in the Eastern District at the Detroit airport, they did not commit the substantive offense of transporting cocaine to the Western District. Asserting that venue is an element of any criminal count, appellants Hill and Jonathan DeBarge contend that they could not have validly been prosecuted in the Western District for this offense. Objections to venue must be timely made, United States v. Fraser, 709 F.2d 1556, 1559 n. 3 (6th Cir.1983), and should, if the alleged defect is apparent on the face of the indictment, be made prior to the start of the trial. United States v. Brown, 739 F.2d 1136, 1148 (7th Cir.), cert. denied, 469 U.S. 933 (1984). The court finds that any defect in venue in the instant case was readily apparent on the face of the indictment and that the entry of objection to the allegedly improper venue at the conclusion of the Government's case-in-chief was untimely. For this reason, the objection to improper venue was waived and this last assignment of error is without merit.
 
 
 8
 For the foregoing reasons, this court finds that the various assignments of error charged on appeal are without merit and the judgment of the district court is hereby affirmed.